IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANDRA SOLIS,<br><br>                    Plaintiff,<br><br>        v.<br><br>FRESNO POLICE DEPARTMENT,<br>CITY OF FRESNO, DAVID FRIES,<br>JOHN GOMEZ,<br><br>                    Defendants. | 1:11-CV-00053 AWI GSA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. #11] |

**INTRODUCTION**

On January 11, 2011, Plaintiff Shandra Solis filed a Complaint against Defendants Fresno Police Department, City of Fresno, Officer David Fries and Officer John Gomez. Plaintiff brings claims for (1) violation of right to equal protection; (2) retaliation in violation of California's Fair Employment and Housing Act ("FEHA"); and (3) conspiracy. On February 10, 2011, Defendants filed a motion to dismiss or in the alternative motion for more definite statement and a motion to strike. For the reasons that follow, the motion to dismiss will be granted.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]"  Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  In other words, leave to amend need not be granted when amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## ALLEGED FACTS

In June 2002, Plaintiff began working in the Identification Bureau of the Fresno Police Department ("FPD"). Complaint at ¶ 13. While employed by the FPD, Plaintiff met Officer Kennan Rodems ("Officer Rodems"). Plaintiff and Officer Rodems were married in June 2005. Id.

In 2006, during her employment with the FPD, Plaintiff and three other female employees submitted complaints of discrimination and sexual harassment against three male supervisors. Id. at ¶ 14. The complaints of discrimination and sexual harassment were well known within the FPD, City of Fresno and District Attorney's Office ("DA's Office"). Id. at ¶ 15. Following the submission of her complaint, Plaintiff was subjected to retaliation by members of the FPD in that she was ostracized and treated differently than she had been treated prior to the submission of the complaint. Id. Because of the retaliation the FPD subjected Plaintiff to, Plaintiff transferred to the Fresno Fire Department in August 2006. Id. at ¶ 16.

Marital differences developed between Plaintiff and Officer Rodems that resulted in her moving out of the family home in February 2009. Id. at ¶ 17. In late April/early May 2009, Plaintiff and Officer Rodems met to discuss a financial matter at a Fresno bank. Id. at ¶ 19. In the parking lot of the bank, an argument developed between Plaintiff and Officer Rodems. Id. at ¶ 20. In a moment of frustration during the argument, Plaintiff "keyed" a door on the passenger side of the truck being driven by Officer Rodems. Id. The truck was jointly owned by Plaintiff and Officer Rodems. Id. The "keying" by Plaintiff consisted of a single vertical scratch. Id. After Plaintiff entered her vehicle to leave, Officer Rodems approached her vehicle and pounded on the vehicle window and yelled at her in anger. Id.

Thereafter, Officer Rodems drove home and called the FPD to report the incident. Id. at ¶ 21. Officer Rodems' report and the manner in which the FPD handled the complaint significantly deviated from the FPD's normal and customary practice for handling reports of vandalism of this nature. Id. The FPD's normal and customary practice for handling reports of

3

vandalism is to have the complaining party make a report over the internet or to take a "counter report" by a "community service officer."[1] Id. at ¶ 22. In this case, however, the FPD discriminated against, singled out and treated Plaintiff differently in that the processing of the complaint and the investigation was not done in accordance with the FPD's normal and customary process. Id.

After Officer Rodems called the FPD to report the alleged vandalism, the FPD dispatched Officer David Fries ("Officer Fries") to investigate the matter. Id. at ¶ 23. Officer Fries called Officer Rodems to speak with him and then went to the bank where the incident occurred. Id. During an interview of a witness at the bank, the witness told Officer Fries that Officer Rodems raised his fist towards Plaintiff during their argument, but did not strike her. Id. Other than the mention of this fact in his report, neither Officer Fries nor anyone else from the FPD followed up on this report of criminal assault. Id.

Officer Fries then drove to Officer Rodems' home in Clovis to personally interview Officer Rodems and view the damage to the truck. Id. at ¶ 24. The passenger side of the truck in question had a single vertical scratch from the "keying" and several smaller horizontal scratches that were clearly not related to or caused by Plaintiff. Id. at ¶ 25. According to the report prepared by Officer Fries, Officer Rodems reported that he saw Plaintiff take "her key and run it vertically down the back passenger door." Id. Officer Rodems did not report that Plaintiff had caused any other damage to his truck and Officer Fries did not ask Officer Rodems if any of the horizontal scratches had been caused by Plaintiff. Id.

Plaintiff was contacted by Officer Fries by telephone as part of his investigation. Id. at ¶ 26. During their conversation, Plaintiff acknowledged "keying" the door of the truck. Id. Officer Fries failed to ask Plaintiff to describe or explain exactly what she had done or what damage she caused. Id. Plaintiff reported to Officer Fries that Officer Rodems was constantly

---

[1] A "community service officer" is a civilian employee and not a sworn police officer. Complaint at 5 n.1.

4

harassing her with unwanted phone calls and text messages.  Id.  Despite the lack of evidence indicating that Plaintiff had caused the horizontal scratches on the side of the truck, Officer Fries wrote in his report that after Plaintiff had vertically scratched the door, "she walked towards her passenger door of her car scratching the front passenger door of [Officer Rodems'] pickup with the key."  Id. at ¶ 27.

After Officer Fries completed his investigation, the FPD assigned the case to Officer Gomez, a detective, to conduct further investigation and handle the case.  Id. at ¶ 28.  The assignment of a detective to investigate a minor vandalism case is not the normal and customary practice of the FPD.  Id.  Officer Gomez prepared and submitted to the DA's Office a recommendation that Plaintiff be prosecuted for felony vandalism.  Id. at ¶ 30.  A charge of felony vandalism is only possible when the amount of the damage caused by the vandalism is $400 or more.  Id.  Plaintiff alleges that Officer Gomez' recommendation was based in part on estimates to repair all the damage on the passenger side of the truck, including but not limited to the horizontal scratches which Plaintiff did not cause.  Id.  Those estimates indicated that the cost to repair all of the damage would be approximately $1,000.  Id.  This estimate did not accurately represent the cost to repair the damage caused by Plaintiff.  Id.  Plaintiff alleges that neither Officer Gomez nor the FPD had ever previously submitted to the DA's Office a recommendation for prosecution for felony vandalism in a case of this nature.  Id. at ¶ 31.

During the investigative process and thereafter, Plaintiff complained about and attempted to file her own complaint against Officer Rodems for assault, battery and harassing phone calls and text messages.  Id. at ¶ 33.  However, Officer Fries, Officer Gomez and the FPD refused to fairly investigate the matter or take any action similar to what they had done with regard to Officer Rodems' allegations of vandalism against Plaintiff.  Id.  Furthermore, Officer Gomez and/or the FPD failed to submit Plaintiffs' complaint to the DA's Office.  Id.

When the DA's Office received the referral of the felony vandalism allegations against Plaintiff from Officer Gomez, the DA's office failed to follow its normal and customary practice

5

for handling cases.  Id. ¶ 34.  The normal and customary practice of the DA's office is that the decision of whether or not to file felony or misdemeanor criminal charges is made by a Deputy District Attorney.  Id. at ¶ 35.  In this case, the matter was referred to Dennis Cooper ("Cooper"), Chief Deputy District Attorney and supervisor of the Domestic Violence Unit.  Id. at ¶¶ 11, 35.  Cooper discriminated against Plaintiff by sending her a letter asking to meet with her to discuss the case due to "the particularities of the incident."  Id.  When Plaintiff called Cooper, he advised her that she did not need an attorney to meet with him.  Id.  Plaintiff, however, refused to meet Cooper without her attorney being present.  Id.

Plaintiff alleges that it is the normal and customary practice of the DA's Office to not pursue criminal charges for minor vandalism cases if the alleged criminal defendant tenders payment of the full amount of the alleged damage to the DA's Office.  Id. at ¶ 36.  In this case, the DA's Office discriminated against, singled out and treated Plaintiff differently in that when Plaintiff, through her attorney, tendered the full amount of the alleged damage for Officer Rodems' truck, Cooper tore up the check and proceeded to file a criminal complaint for felony vandalism against Plaintiff.  Id.

Officer Gomez expedited the issuance of an arrest warrant for Plaintiff by "hand walking" the warrant to the court on a "rush" basis to obtain a judge's immediate signature for Plaintiff's arrest on a minor vandalism case.  Id. at ¶ 37.  The normal and customary practice of the FPD is that a "rush" warrant is only sought for defendants that pose an extraordinary risk to the community.  Id.  The normal and customary practice is to send warrants in cases such as the one against Plaintiff to the court with other warrants as a group.  Id.  After the arrest warrant was issued, Officer Gomez and the FPD insisted that Plaintiff surrender for arrest that day and refused to allow Plaintiff to surrender the following Monday.  Id.

The normal and customary practice of the DA's Office is to negotiate a settlement of such vandalism cases and agree to dismiss the charges if the amount of the alleged damage is paid in full.  Id. at ¶ 38.  In this case, the Superior Court Judge suggested such a resolution, but the DA's

Office discriminated against and singled Plaintiff out when it refused to agree to such a resolution because "the case [was] in the media." Id. Subsequently, the Superior Court Judge reduced the charges to a misdemeanor and eventually all charges were dismissed by the DA's office. Id. at ¶¶ 39, 46.

## DISCUSSION

1. FPD is not a proper defendant in this case.

Defendants seek to dismiss FPD as a defendant. Defendants contend that a municipal department is not a person who can be sued under 42 U.S.C. § 1983. Motion to dismiss at 6:13-16.

A claim for civil rights violations pursuant to 42 U.S.C. § 1983 requires a "person" who acted under color of state law. Local governmental units, such as counties or municipalities, are considered "persons" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989). However, municipal departments and sub-units, including police departments, are generally not considered "persons" within the meaning of 42 U.S.C. § 1983. Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995); Sanders v. Aranas, No. 1:06-CV-1574 AWI SMS, 2008 WL 268972, at *2 (E.D. Cal. Jan. 29, 2008).

The FPD is not a proper defendant because it is a sub-division of the City of Fresno, who has already been named as a defendant in this case. Therefore, FPD is stricken as a defendant in this action.

2. Plaintiff has not stated a "class of one" Equal Protection claim against the individual defendants.

While unclear from the Complaint, Plaintiff clarifies in her opposition that she is asserting a "class of one" Equal Protection claim under 42 U.S.C. § 1983. Opposition to motion to dismiss at 6:1-4. Plaintiff contends that Officer Fries and Officer Gomez "trampled upon her constitutional rights by aggressively pursuing meritless felony criminal charges in a manner contrary to the FPD's standard policy and procedures[.]" Id. at 3:2-4; see also Complaint at ¶¶

23-31. Plaintiff states that she "was singled out for discrimination and harassment because of complaints she had made against FPD/City of Fresno and because the person making the complaint" against her was a police officer from the FPD. Id. at 3:6-9; see also Complaint at ¶ 46.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." Serrano v. Francis, 345 F.3d 1071, 1081 (9th Cir. 2003) (citation omitted). "Denials [of the equal protection of the laws] by any person acting under color of state law are actionable under § 1983." Dyess ex rel. Dyess v. Tehachapi Unified School Dist., No. 1:10-CV-00166-AWI-JLT, 2010 WL 3154013, at *6 (E.D. Cal. Aug. 6, 2010).

"An Equal Protection claim is usually brought because of an irrational law or by a member of a protected class." Jercich v. Cnty. of Merced, No. 1:06-CV-00232-OWW-DLB, 2006 WL 3747184, at *9 (E.D. Cal. Dec. 19, 2006) (citation omitted). However, where state action does not affect a fundamental right or protected classification, plaintiffs can establish an Equal Protection claim based on a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). An Equal Protection claim based on a "class of one" requires a plaintiff to allege that she has been (1) intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment. Id. The rationale is that "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 602 (2008).

Defendants contend that "class of one" Equal Protection claims are limited under Engquist and are not applicable to the investigation and prosecution of criminal acts. Motion to dismiss at 10-11. In Engquist, the Supreme Court held that "class of one" Equal Protection

claims have "no application in the public employment context" because the "class of one" theory was a "poor fit" in a context that involved discretionary decisionmaking. Engquist, 553 U.S. at 605. Where an official has discretion to make a decision "based on a vast array of subjective, individualized assessments," "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated . . . because treating like individuals differently is an accepted consequence of the discretion granted." Id. at 603. Thus, the Supreme Court concluded: "To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship."[2] Id. at 605.

Furthermore, the Supreme Court in Engquist used a law enforcement example to illustrate state action that involves discretionary decision-making:

> Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself-the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

Id. at 603-04.

Although Engquist addressed state action specifically within the public employment context, courts have extended its rationale to other contexts in which a plaintiff is challenging a

---

[2] In the motion to dismiss, Defendants argue that Plaintiff is precluded from asserting a "class of one" Equal Protection claim against Defendants because she is a public employee. Motion to dismiss at 10:24-25. Engquist precluded "class of one" Equal Protection claims involving a state government's discretionary dealings with their citizen employees. In this case, Plaintiff's "class of one" Equal Protection claim relates to the investigation and prosecution of her vandalism case and not the City of Fresno's discretionary dealings with her as a citizen employee. Therefore, this argument is without merit.

9

discretionary state action under a "class of one" theory. Defendants specifically point to <u>Flowers v. City of Minneapolis</u>, 558 F.3d 794 (8th Cir. 2009).[3] <u>Motion to dismiss</u> at 11:15-16. In <u>Flowers</u>, a plaintiff asserted a "class of one" Equal Protection claim, alleging that police officers intentionally singled him out for harassment. <u>Id.</u> The Eighth Circuit stated that a "police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion." <u>Id.</u> at 799. Therefore, the Eighth Circuit concluded that "while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim." <u>Id.</u> at 799-800.

In contrast, in <u>Hanes v. Zurick</u>, 578 F.3d 491, 492 (7th Cir. 2009), the Seventh Circuit held that a plaintiff stated a "class of one" Equal Protection claim against eleven police officers that repeatedly arrested him solely for reasons of personal animus. In <u>Hanes</u>, plaintiff alleged

> that as a result of a long-running . . . dispute with his neighbors, both [plaintiff] and the neighbors have complained repeatedly to the police. Yet when the police respond, they arrest only [plaintiff], no matter who initiated the complaint. They have arrested him at least eight times, and those arrests have led to thirteen criminal charges for minor crimes. Every single charge was later dropped. According to [plaintiff], the police have treated him unequally by ignoring his complaints against others and arresting only him because they "hate" him and "do not respect him." Those reasons, [plaintiff] insists, are "unrelated to the police officers' duties."

<u>Id.</u> The court noted that "<u>Engquist</u> does show that some discretionary police decision-making is off-limits from class-of-one claims[,]" including the example that "comes from the Supreme Court's own opinion, which discusses the traffic cop who has no way to distinguish among many speeding drivers." <u>Id.</u> at 496. However, the court concluded that "the officer who repeatedly arrests someone solely because of malice does have a way to distinguish between the citizen repeatedly arrested and the citizen left alone: the officer hates the arrestee." <u>Id.</u> "The officer motivated by malice alone is not exercising discretion and is not weighing the factors relevant to

---

[3] Defendants also cite to <u>U.S. v. Moore</u>, 543 F.3d 891, 901 (7th Cir. 2008) (holding that a "class of one" Equal Protection claim does not apply to prosecutorial discretion); and <u>Occhionero v. City of Fresno</u>, No. CV F 05-1184 LJO SMS, 2008 WL 2690431, at *9 (E.D. Cal. Jul. 3, 2008) (concluding that a "class of one" Equal Protection claim does not apply to City's enforcement of code violations).

the officer's duties to the public." Id.

It appears to the Court that the Ninth Circuit has not addressed whether a plaintiff can bring a "class of one" Equal Protection claim against police officers for their law enforcement decision-making. To the extent that Plaintiff can bring such a claim, Plaintiff has not sufficiently alleged to whom she was similarly situated with and whether there was no rational basis for Plaintiff's treatment by Officer Gomez and Officer Fries.

With respect to the differential treatment element, a plaintiff must demonstrate that "the level of similarity between plaintiff and the persons with whom they compare themselves must be extremely high." Wilson v. City of Fresno, No. CV F 09-0887 LJO SMS, 2009 WL 3233879, at *7 (E.D. Cal. Oct. 2, 2009) (citing to Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005)). To succeed, plaintiffs "must demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects." Id. (citing to Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002)). A plaintiff must establish that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake.

Id. (citing to Neilson, 409 F.3d at 105; Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007)).

Plaintiff's Complaint makes the conclusory allegation that Officer Fries and Officer Gomez "discriminated against, singled out and failed to treat Plaintiff like other individuals accused of similar crimes[.]" Complaint at ¶ 43. However, there are no facts indicating whether these individuals were prima facie identical to Plaintiff in all relevant respects. Thus, Plaintiff has failed to distinguish her treatment from similarly situated individuals.

In addition, to prevail on the rational basis element, the burden is on the plaintiff to negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." Wilson, 2009 WL 3233879, at *8 (citing to Lauth v. McCollum, 424 F.3d 631,

11

634 (7th Cir. 2005)). "Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized." Id. (citing to Bd. of Trs. of Univ. of Alabama v. Garrett, 531 U.S. 356, 367 (2001)). A decision "can be considered irrational" only when the decision-maker "acts with no legitimate reason for its decision." Id. (citing to Harlen Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 500 (2d Cir. 2001)). Plaintiff's Complaint fails to address an absence of rational basis for Plaintiff's treatment. Accordingly, Plaintiff's "class of one" Equal Protection claim against Officer Fries and Officer Gomez is dismissed without prejudice and with leave to amend.

    3.    Plaintiff has not stated a malicious prosecution claim against the individual defendants.

Plaintiff's opposition also suggests that she is asserting a malicious prosecution claim against Officer Fries and Officer Gomez based on an equal protection theory. Opposition to motion to dismiss at 7:20-21. Plaintiff states that she was "specifically targeted by Defendants for prosecution." Id. at 7:18-19.

A plaintiff may bring a direct Equal Protection claim and a malicious prosecution claim in the same action under 42 U.S.C. § 1983. Awabdy v. City of Adelanto, 368 F.3d 1062, 1072 (9th Cir. 2004). The general rule is that a claim for malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). However, "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." Cline v. Brusett, 661 F.2d 108, 112 (9th Cir. 1981).

Thus, in order to prevail on a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must demonstrate not only a deprivation of a constitutionally protected right, but also all of the elements for malicious prosecution under California law. Fenters v. Chevron, No. CV-F-05-1630 OWW/DLB, 2010 WL 5477710, at *29 (E.D. Cal. Dec. 30, 2010) (citing

12

to Haupt v. Dillard, 17 F.3d 285, 289 (9th Cir. 1994)). To state a claim for malicious prosecution under California law, a plaintiff must show that the proceeding was (1) commenced by or at the direction of the defendant, (2) pursued to a legal termination favorable to plaintiff, (3) brought without probable cause, and (4) initiated with malice. Womack v. Cnty. of Amador, 551 F. Supp. 2d 1017, 1031 (E.D. Cal. 2006); Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863, 871 (1987). Malicious prosecution actions are not limited to suits against prosecutors but may be brought against other persons who have wrongfully caused the charges to be filed. Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1126-27 (9th Cir. 2002).

Since the Court concluded above that Plaintiff has failed to state a "class of one" Equal Protection claim against Officer Fries and Officer Gomez, the Court also concludes that Plaintiff has failed to state a malicious prosecution claim. Plaintiff has not sufficiently alleged a deprivation of her Equal Protection rights by Officer Gomez and Officer Fries. Therefore, Plaintiff's malicious prosecution claim is dismissed without prejudice and with leave to amend.

    4.    Plaintiff has not stated a municipal liability claim against the City of Fresno.

Within the first cause of action, Plaintiff asserts a municipal liability claim against the City of Fresno. Public entities are liable under 42 U.S.C. § 1983 when the constitutional violation occurs as a result of a policy or custom. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690-91 (1978). To state a claim for municipal liability for the failure to protect an individual's constitutional rights, the plaintiff must establish facts indicating the following: (1) the plaintiff possessed a constitutional right, of which he was deprived, (2) the municipality had a policy, (3) the municipal policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the municipal policy is a moving force behind the constitutional violation. Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). Since Plaintiff has not established that she was deprived of her to right to Equal Protection as concluded above, Plaintiff's municipal liability claim must also fail. Dismissal is without prejudice and with leave to amend.

13

  5. Plaintiff has not stated a conspiracy claim.

In the third cause action, Plaintiff brings a conspiracy claim, alleging that Defendants "conspired and agreed among themselves to discriminate against, single out and treat Plaintiff differently with regard to the handling, investigation and prosecution of Plaintiff[.]" Complaint at ¶ 57.

To state a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must allege an agreement or meeting of minds to violate constitutional rights. Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998). Furthermore, a plaintiff must allege that there was an actual deprivation of his constitutional rights as a result of the conspiracy. Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006). Since Plaintiff has not sufficiently alleged an actual deprivation of her Equal Protection rights, Plaintiff's conspiracy claim must also fail. Dismissal is without prejudice and with leave to amend.

  6. Plaintiff cannot maintain a FEHA retaliation claim against the individual defendants.

Defendants move to dismiss Officer Fries and Officer Gomez as defendants with respect to Plaintiff's retaliation claim under FEHA. Motion to dismiss at 15:21-22. The Supreme Court of California has concluded that "individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." Reno v. Baird, 18 Cal. 4th 640, 663 (1998). In her opposition, Plaintiff agrees that the individual defendants should be dismissed from this cause of action. Opposition to motion to dismiss at 14:1. Therefore, Officer Gomez and Officer Fries are stricken as defendants from this cause of action.

  7. Plaintiff is granted leave to amend her FEHA retaliation claim.

In cause of action two, Plaintiff asserts a FEHA retaliation claim against the City of Fresno. To establish a prima facie case of retaliation under California law, a plaintiff must prove that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. Morgan

v. Regents of Univ. Of Cal., 88 Cal. App. 4th 52, 69 (2000).

In retaliation claims, an "adverse employment action" is one that "materially affects the terms, conditions, or privileges of employment, rather than simply [subjects] the employee . . . to an adverse action or treatment that reasonably would deter an employee from engaging in the protected activity." McRae v. Dep't of Corrs. and Rehab., 142 Cal. App. 4th 377, 386 (2006) (citation omitted). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Thomas v. Dep't of Corrs., 77 Cal. App. 4th 507, 511 (2000). Thus, a "change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." Akers v. Cnty. of San Diego, 95 Cal. App. 4th 1441, 1455 (2002). The plaintiff must show the employer's retaliatory actions had a detrimental and substantial effect on the plaintiff's employment. Id. at 1454. The determination of whether there is an adverse employment action is made on a case-by-case basis. Jones v. Dep't of Corrs. and Rehab., 152 Cal. App. 4th 1367, 1381 (2007).

Plaintiff's Complaint is unclear as to what conduct she is alleging constituted an adverse employment action. Plaintiff alleges that after she submitted her sexual harassment complaint, she was "subjected to retaliation by some members of the FPD in that [she] was ostracized and treated differently than she had been treated prior to the submission of the complaint." Complaint at ¶ 15. Plaintiff alleges that "because of the retaliation Plaintiff was subjected to by members of the FPD following the submission of her complaint, Plaintiff sought a transfer to a different City department." Id. at ¶ 16. Plaintiff's Complaint also suggests that her retaliation claim is based on Officer Fries and Officer Gomez' conduct during the investigation and prosecution of Plaintiff's vandalism case. Complaint at ¶¶ 22, 32.

In response to this cause of action, Defendants filed a motion to strike pursuant to California's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. See Cal. Civ. Proc. Code § 425.16. In their motion, Defendants argue that the Court should strike Plaintiff's

FEHA retaliation claim because it is based on Officer Fries and Officer Gomez' conduct emanating from an official proceeding. Motion to strike at 1:10-12.

Plaintiff's opposition to Defendants' motion to strike raises new allegations that were not part of the original Complaint. Plaintiff's opposition clarifies that she is basing her FEHA retaliation claim on an investigation taken by the Fresno Fire Department related to her incident with Officer Rodems and not the actions of Officer Fries or Officer Gomez. Opposition to motion to strike at 7-9. The Court construes Plaintiff's new allegations as a motion to amend pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. Under Rule 15(a)(2), a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The Court should freely give leave to amend when justice so requires. Id. Since the Court is granting Plaintiff leave to amend her claims under 42 U.S.C. § 1983, the Court also grants Plaintiff leave to amend her FEHA retaliation claim.[4]

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. FPD is stricken as a defendant in this action;
2. Officer Fries and Officer Gomez are stricken as defendants with respect to Plaintiff's FEHA retaliation claim;
3. All of Plaintiff's claims are dismissed without prejudice and with leave to amend; and
4. Any amended complaint must be filed within twenty-one (21) days of the filing of this order.

IT IS SO ORDERED.

Dated: August 12, 2011

CHIEF UNITED STATES DISTRICT JUDGE

---

[4] In light of this conclusion, the Court will not address Defendants' arguments within the motion to strike.