IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANDRA SOLIS, <br><br>        Plaintiff, <br><br>    v. <br><br> CITY OF FRESNO, DAVID FRIES, JOHN GOMEZ, <br><br>        Defendants. | 1:11-CV-00053 AWI GSA <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br> [Doc. #26] |

## INTRODUCTION

On September 6, 2011, Plaintiff Shandra Solis filed a First Amended Complaint ("FAC") against Defendants City of Fresno, Officer David Fries ("Officer Fries") and Detective John Gomez ("Detective Gomez").  Plaintiff brings claims for (1) violation of right to equal protection; (2) retaliation in violation of California's Fair Employment and Housing Act ("FEHA"); and (3) conspiracy.  On September 26, 2011, Defendants filed a motion to dismiss and motion to strike pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. While Defendants assert that they are bringing a motion to strike under Rule 12(f), the Court concludes that Defendants' arguments within their motion to strike challenge the sufficiency of

Plaintiff's claims.[1]  Therefore, the Court will address the substance of Defendants' motion to strike as if it were pled pursuant to Rule 12(b)(6).  See Kelley v. Corrs. Corp. of Am., 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010).  For the reasons that follow, Defendants' motion to dismiss will be granted in part and denied in part.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]"  Telesaurus VPC, LLC v.

---

[1] Rule 12(f) is confined by its own terms to the removal from a complaint of claims that are (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous.  See Fed. R. Civ. P. 12(f).

Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  In other words, leave to amend need not be granted when amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

**ALLEGED FACTS**

In June 2002, Plaintiff began working in the Identification Bureau of the Fresno Police Department ("FPD").  FAC at ¶ 13.  While employed by the FPD, Plaintiff met Officer Kennan Rodems ("Officer Rodems").  Id.  Plaintiff and Officer Rodems were married in June 2005.  Id.

In 2006, during her employment with the FPD, Plaintiff and three other female employees submitted complaints of discrimination and sexual harassment against three male supervisors.  Id. at ¶ 14.  The complaints of discrimination and sexual harassment by Plaintiff were well known within the FPD, City of Fresno and District Attorney's Office ("DA's Office").  Id. at ¶ 15.  The male supervisors against whom the complaints were made were well liked and friends of Fresno Police Chief Jerry Dyer ("Dyer") and other members of the FPD.  Id.

Because of Plaintiffs' complaint of discrimination and harassment, others in the FPD, including but not limited to Dyer, were angry with Plaintiff for making her complaint.  Id. at ¶ 16.  Following the submission of her complaint, Plaintiff was subjected to retaliation by some members of the FPD in that she was ostracized and treated differently than she had been treated prior to the submission of the complaint.  Id.  Because of the retaliation the FPD subjected Plaintiff to, Plaintiff transferred to the Fresno Fire Department in August 2006.  Id. at ¶ 17.  Although Plaintiff's new position paid significantly less than her position with the FPD, Plaintiff

took the new job to get away from the harassment, discrimination and retaliation she experienced at the FPD. Id.

Marital differences developed between Plaintiff and Officer Rodems that resulted in her moving out of the family home in February 2009. Id. at ¶ 18. Divorce proceedings eventually followed. Id. After their separation, Officer Rodems repeatedly contacted Plaintiff by phone and text message in attempts to reconcile. Id. at ¶ 19. Plaintiff informed Officer Rodems on several occasions that she did not want to discuss reconciliation, but he persisted with his communications. Id.

In late April/early May 2009, Plaintiff and Officer Rodems met to discuss a financial matter at a Fresno bank. Id. at ¶ 20. In the parking lot of the bank, an argument developed between Plaintiff and Officer Rodems. Id. at ¶ 21. In a moment of frustration during the argument, Plaintiff "keyed" a door on the passenger side of the truck being driven by Officer Rodems. Id. The truck was jointly owned by Plaintiff and Officer Rodems. Id. The "keying" by Plaintiff consisted of a single vertical scratch. Id. After Plaintiff entered her vehicle to leave, Officer Rodems approached her vehicle and pounded on the vehicle window and yelled at her in anger. Id.

Thereafter, Officer Rodems drove home and called the FPD to report the incident. Id. at ¶ 22. Despite there being no active crime in progress, Officer Fries was promptly dispatched by FPD to investigate the matter and take a report. Id. After his dispatch, Officer Fries immediately called Officer Rodems and spoke with him about the incident. Id. After speaking with Officer Rodems, Officer Fries went to the bank to investigate the scene, locate witnesses, and determine whether any video recordings were available. Id.

The FPD's normal and customary practice for handling reports of vandalism similar to that alleged by Officer Rodems is to have the complaining party make a report over the internet or to take a "counter report" by a "community service officer."[2] Id. at ¶ 23. It is not the normal

---

[2] A "community service officer" is a civilian employee and not a sworn police officer. FAC at 5 n.1.

and customary practice of the FPD to dispatch a patrol officer to investigate or to take a report when responding to complaints that are similar to that alleged by Officer Rodems. Id.

While interviewing a witness at the bank, the witness told Officer Fries that Officer Rodems raised his fist towards Plaintiff during their argument. Id. at ¶ 24. Other than the mention of this fact in his report, neither Officer Fries nor anyone else from the FPD followed up on this report of criminal assault. Id.

After concluding his investigation at the bank, Officer Fries drove to Officer Rodems' home in Clovis to personally interview him and view the damage to the truck. Id. at ¶ 25. While en route to Officer Rodems' home and before inspecting the damage to the truck, Officer Fries reported to his superior officer that this case appeared to be a felony. Id. During the interview, Officer Rodems told Officer Fries that he did not want to pursue any charges, rather he just wanted the incident to be documented. Id. at ¶ 26.

After interviewing Officer Rodems and seeing the truck, Officer Fries summoned the Identification Bureau to photograph the vehicle. Id. at ¶ 27. On the passenger side of the vehicle, there was a single vertical scratch from the "keying" and several smaller horizontal scratches that were clearly not related to or caused by Plaintiff. Id. According to the report prepared by Officer Fries, Officer Rodems stated during his interview that he saw Plaintiff take "her key and run it vertically down the back passenger door." Id. Officer Rodems did not report that Plaintiff had caused any other damage to his truck and Officer Fries did not ask Officer Rodems if any of the horizontal scratches had been caused by Plaintiff. Id.

After meeting with Officer Rodems, Officer Fries contacted Plaintiff by telephone. Id. at ¶ 28. Plaintiff told Officer Fries that Officer Rodems was constantly harassing her with unwanted phone calls and text messages. Id. Plaintiff cooperated fully and acknowledged "keying" the door of the truck. Id. At no time did Officer Fries or any other FPD officer ever ask Plaintiff to describe or explain what damage she caused. Id. Officer Fries also failed to ask Plaintiff about the assault against her by Officer Rodems that was described by the witness at the bank. Id. Despite the lack of evidence indicating that Plaintiff had caused the horizontal

5

scratches on the side of the truck, Officer Fries wrote in his report that after Plaintiff had vertically scratched the door, "she walked towards her passenger door of her car scratching the front passenger door of [Officer Rodems'] pickup with the key." Id. at ¶ 29.

Once Officer Fries completed his investigation, FPD assigned Detective Gomez to conduct further investigation. Id. at ¶ 30. It is not the normal and customary practice of FPD to assign a detective to investigate when the suspect has been identified, has accepted responsibility, the damage has been fully documented, and the victim did not want anything done other than documentation of the incident. Id. at ¶ 31.

Throughout the investigative process and thereafter, Plaintiff complained about and attempted to file her own complaint against Officer Rodems for assault, battery and harassing phone calls and text messages. Id. at ¶ 32. However, Officer Fries, Detective Gomez and the FPD refused to fairly investigate the matter or take any action similar to what they had done with respect to the allegations by Officer Rodems. Id. Furthermore, despite representations to the contrary, Detective Gomez and/or the FPD failed to submit Plaintiff's complaint to the DA's Office. Id.

Detective Gomez prepared and submitted to the DA's Office a recommendation that Plaintiff be prosecuted for felony vandalism. Id. at ¶ 33. A charge of felony vandalism is only possible when the amount of the damage caused by the vandalism is $400 or more. Id. When the damages are less than $400, the charge can only be a misdemeanor. Id. Plaintiff alleges that Detective Gomez' recommendation was based in part on estimates to repair all the damage on the passenger side of the truck, including but not limited to the horizontal scratches which Plaintiff did not cause. Id. Plaintiff alleges that neither Detective Gomez nor the FPD had ever previously submitted to the DA's Office a recommendation for prosecution for felony vandalism in a case where the perpetrator had accepted responsibility for causing minor damage and the perpetrator was not suspected of involvement in other criminal activities. Id. at ¶ 34.

After receiving referrals from the FPD for prosecution of vandalism cases that are similar to Plaintiff's case, the normal and customary practice is to assign the case to a Deputy District

6

Attorney who is responsible for making decisions regarding the prosecution of the case. Id. at ¶ 36. However, in this case, after receiving the referral from FPD to prosecute Plaintiff for felony vandalism, the case was not assigned to a Deputy District Attorney, but was instead assigned to Dennis Cooper ("Cooper"), who is the Chief Deputy District Attorney and Supervisor of the Domestic Violence Unit. Id. at ¶¶ 11 and 36. Plaintiff alleges that Cooper sent Plaintiff a letter asking to meet with her to discuss the case due to "the particularities of the incident." Id. When Plaintiff called Cooper, he advised her that she did not need an attorney to meet with him. Id. Plaintiff refused to meet Cooper without her attorney being present. Id.

Subsequently, Plaintiff, through her attorney, tendered the full amount of the alleged damage ($1,000). Id. at ¶ 37. Cooper tore up the check and filed a criminal complaint charging Plaintiff with felony vandalism. Id. Plaintiff alleges that it is the normal and customary practice of the DA's Office to encourage settlement of vandalism cases of the nature reported by Officer Rodems rather than file felony charges. Id.

Detective Gomez expedited the issuance of an arrest warrant for Plaintiff by "hand walking" the warrant to the court on a "rush" basis to obtain a judge's immediate signature for Plaintiff's arrest on a minor vandalism case. Id. at ¶ 38. The normal and customary practice is to send warrants in cases such as the one against Plaintiff to the court with other warrants as a group. Id. Warrants handled in this manner can take several weeks to process. Id. The normal and customary practice of the FPD is that a "rush" warrant is only sought for defendants that pose an extraordinary risk to the community. Id. After the arrest warrant was issued, Detective Gomez and/or the FPD insisted that Plaintiff surrender for arrest that day and refused to allow Plaintiff to surrender the following Monday. Id. at ¶ 39.

When Plaintiff's criminal defense attorney and the DA's office were discussing the criminal case before a Superior Court Judge, the Judge stated that the case was appropriate for a negotiated settlement between the parties which would allow the charges to be dismissed once Plaintiff paid for the damages. Id. at ¶ 40. The Judge suggested the case be handled in that manner. Id. However, the DA's Office refused to agree to such a resolution because "the case is

7

in the media." Id.

Plaintiff alleges that once such vandalism charges are filed, it is the normal and customary practice of the DA's Office to agree to dismiss the charges of vandalism against members of the general public if the defendant tenders payment of the full amount of the alleged damages and is not accused of involvement in other criminal activity. Id. at ¶ 41. Rather than seek a prompt and equitable resolution of the criminal case, the DA's Office continued to pursue felony charges against Plaintiff and objected strongly when the Judge reduced the charge to a misdemeanor. Id. at ¶ 42. The DA's Office repeatedly refused to obey a Court Order requiring it to provide records of similar prosecutions to assist in Plaintiff's criminal defense. Id.

## DISCUSSION

A.   Plaintiff has not stated a "class of one" Equal Protection claim against the individual defendants.

In the first cause of action, Plaintiff asserts a "class of one" Equal Protection claim under 42 U.S.C. § 1983 against Officer Fries and Detective Gomez.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." Serrano v. Francis, 345 F.3d 1071, 1081 (9th Cir. 2003) (citation omitted). "Denials [of the equal protection of the laws] by any person acting under color of state law are actionable under § 1983." Dyess ex rel. Dyess v. Tehachapi Unified Sch. Dist., No. 1:10-CV-00166-AWI-JLT, 2010 WL 3154013, at *6 (E.D. Cal. Aug. 6, 2010).

"An Equal Protection claim is usually brought because of an irrational law or by a member of a protected class." Jercich v. Cnty. of Merced, No. 1:06-CV-00232-OWW-DLB, 2006 WL 3747184, at *9 (E.D. Cal. Dec. 19, 2006) (citation omitted). However, where state action does not affect a fundamental right or protected classification, plaintiffs can establish an Equal Protection claim based on a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). An Equal Protection claim based on a "class of one" requires a plaintiff to

8

allege that she has been (1) intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment. Id. The rationale is that "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 602 (2008).

Defendants repeat their argument from their prior motion to dismiss that "class of one" Equal Protection claims are not applicable to the investigation and prosecution of criminal acts.[3] Motion at 5:14, Doc. 26-1 at 6. Defendants again rely on Engquist and its progeny for this proposition. In Engquist, the Supreme Court held that "class of one" Equal Protection claims have "no application in the public employment context" because the "class of one" theory is a "poor fit" in a context that involved discretionary decisionmaking. Engquist, 553 U.S. at 605. Although Engquist addressed state action specifically within the public employment context, courts have extended its rationale to other contexts in which a plaintiff is challenging a discretionary state action under a "class of one" theory. For example, Defendants cite to Flowers v. City of Minneapolis, 558 F.3d 794 (8th Cir. 2009). In Flowers, plaintiff asserted a "class of one" Equal Protection claim, alleging that police officers intentionally singled him out for harassment. The Eighth Circuit stated that a "police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion." Id. at 799. Therefore, the Eighth Circuit concluded that "while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a

---

[3] Defendants also repeat their argument that Plaintiff is precluded from asserting a "class of one" Equal Protection claim against Defendants under Engquist because Plaintiff is a public employee. Motion at 5:7, Doc. 26-1 at 6. Engquist precludes "class of one" Equal Protection claims involving a state government's discretionary dealings with their citizen employees. Defendants contend that Plaintiff's "class of one" Equal Protection claim falls under Engquist because Plaintiff alleges that she was singled out by Defendants because she made a complaint of sexual harassment while employed with the FPD. Id. at 5 n.1, Doc. 26-1 at 6. Defendants' argument is unpersuasive. Plaintiff's "class of one" Equal Protection claim relates to the investigation and prosecution of her vandalism case and not the City of Fresno's discretionary dealings with her as a citizen employee. Therefore, this argument is without merit.

9

class-of-one equal protection claim." Id. at 799-800.

In its prior order, the Court cited to Hanes v. Zurick, 578 F.3d 491, 496 (7th Cir. 2009), which distinguished Engquist and Flowers, and held that a plaintiff can state a "class of one" equal protection claim against police officers when the police officers are motivated by "malice alone." Order at 10-11, Doc. 24 at 10-11. The Seventh Circuit noted that "Engquist does show that some discretionary police decision-making is off-limits from class-of-one claims." Id. However, the court concluded that "the officer who repeatedly arrests someone solely because of malice does have a way to distinguish between the citizen repeatedly arrested and the citizen left alone: the officer hates the arrestee." Id. "The officer motivated by malice alone is not exercising discretion and is not weighing the factors relevant to the officer's duties to the public." Id.

The Court also noted in its prior order that it does not appear that the Ninth Circuit has addressed this issue, and therefore Hanes leaves the door open for Plaintiff to bring a "class of one" equal protection claim against Officer Fries and Detective Gomez. Order at 11:2-6, Doc. 24 at 11. In their motion to dismiss, Defendants maintain that Hanes is factually distinguishable from this case because Hanes involved an officer that repeatedly arrested someone based on malice. Motion at 6:26-28 and 7:1-11, Doc. 26-1 at 7-8. Defendants assert that Hanes does not apply to this case because this case involves a single criminal investigation and prosecution. Id. at 7:8-11, Doc. 26-1 at 8. This argument is unpersuasive. Hanes stands for the proposition that a plaintiff can state a "class of one" protection claim when the "police have inflicted unequal treatment on a citizen for no reason other than malice." Hanes, 578 F.3d at 495. The court's reasoning was based on the fact that the police officers treated plaintiff differently based on malice and not the fact that the plaintiff was repeatedly arrested.

Nevertheless, Plaintiff has not stated a claim under a "class of one" theory against Officer Fries and Detective Gomez. As stated above, in order to state a claim, Plaintiff must sufficiently allege that she was (1) intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment. Olech, 528 U.S. at 564.

10

With respect to the differential treatment element, a plaintiff must demonstrate that "the level of similarity between plaintiff and the persons with whom they compare themselves must be extremely high." Wilson v. City of Fresno, No. CV F 09-0887 LJO SMS, 2009 WL 3233879, at *7 (E.D. Cal. Oct. 2, 2009) (citing to Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005)). To succeed, plaintiffs "must demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects." Id. (citing to Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002)). A plaintiff must establish that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake.

Id. (citing to Neilson, 409 F.3d at 105; Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007)).

Plaintiff's FAC again makes the conclusory allegation that Officer Fries and Detective Gomez "singled out and failed to treat Plaintiff like other similarly situated individuals, i.e., persons accused of similar crimes who have accepted responsibility and are not involved in other criminal activity." FAC at ¶ 45. Plaintiffs' FAC is devoid of facts indicating whether these unnamed individuals were prima facie identical to Plaintiff in all relevant aspects. Moreover, Plaintiff does not allege a single instance in which a similarly situated person was treated differently by Officer Fries and Detective Gomez. See King v. New York State Div. of Parole, 260 Fed. Appx. 375, 379-80 (2d Cir. 2008) (concluding that because plaintiff "failed to identify a single individual with whom he can be compared for Equal Protection purposes," his class of one equal protection claim was properly dismissed). Accordingly, Defendants' motion to dismiss Plaintiff's "class of one" Equal Protection claim against Officer Fries and Detective Gomez is GRANTED without prejudice and with leave to amend.

B.   Plaintiff has not stated a municipal liability claim against the City of Fresno.

In the first cause of action, Plaintiff also brings a municipal liability claim against the City of Fresno. To state a claim for municipal liability for the failure to protect an individual's

11

constitutional rights, the plaintiff must establish facts indicating the following: (1) the plaintiff possessed a constitutional right, of which he was deprived, (2) the municipality had a policy, (3) the municipal policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the municipal policy is a moving force behind the constitutional violation. Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). As concluded above, Plaintiff has not established that she was deprived of her right to Equal Protection. Therefore, Plaintiff's municipal liability claim must also fail. Dismissal is without prejudice and with leave to amend.

C.     Plaintiff has not stated a conspiracy claim under 42 U.S.C. § 1983.

In the third cause action, Plaintiff brings a conspiracy claim, alleging that Defendants "conspired and agreed among themselves to discriminate against, single out and treat Plaintiff differently than similarly situated members of the general public who are alleged to have committed vandalism of the nature reported by" Officer Rodems. FAC at ¶ 65.

To state a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must allege an agreement or meeting of minds to violate constitutional rights. Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998). Furthermore, a plaintiff must allege that there was an actual deprivation of his constitutional rights as a result of the conspiracy. Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006). Since Plaintiff has not sufficiently alleged an actual deprivation of her Equal Protection rights, Plaintiff's conspiracy claim must also fail. Dismissal is without prejudice and with leave to amend.

D.     Defendants' motion to dismiss Plaintiff's FEHA retaliation claim is denied.

In the second cause of action, Plaintiff asserts a relation claim under FEHA against the City of Fresno. Plaintiff generally alleges that the City of Fresno took various retaliatory actions against her after she filed a complaint of sexual discrimination and harassment against three male supervisors with the FPD. FAC at ¶¶ 58-62.

To establish a prima facie case of retaliation under California law, a plaintiff must prove that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. Morgan

12

v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 69 (2000).

Defendants set forth numerous arguments in their motion with respect to Plaintiff's FEHA retaliation claim, which will be discussed in turn below.

1. Defendants' argument that a personnel investigation or threat of termination cannot constitute an adverse employment action under FEHA as a matter of law fails.

Defendants argue that a personnel investigation or threat of termination cannot, on their own, constitute an adverse employment action under FEHA as a matter of law. Motion at 18:17-18 and 24:8-15, Doc. 26-1 at 19 and 25. In the FAC, Plaintiff alleges that she was retaliated against when she was subjected to an investigation by the Fire Department and threatened with termination. FAC at ¶ 61.

In retaliation claims, an "adverse employment action" is one that "materially affects the terms, conditions, or privileges of employment, rather than simply [subjects] the employee . . . to an adverse action or treatment that reasonably would deter an employee from engaging in the protected activity." McRae v. Dep't of Corrs. and Rehab., 142 Cal. App. 4th 377, 386 (2006) (citation omitted). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Thomas v. Dep't of Corrs., 77 Cal. App. 4th 507, 511 (2000). Thus, a "change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." Akers v. Cnty. of San Diego, 95 Cal. App. 4th 1441, 1455 (2002). The plaintiff must show the employer's retaliatory actions had a detrimental and substantial effect on the plaintiff's employment. Id. at 1454. The determination of whether there is an adverse employment action is made on a case-by-case basis. Jones v. Dep't of Corrs. and Rehab., 152 Cal. App. 4th 1367, 1381 (2007).

Defendants cite to numerous cases that concluded based on the facts of their cases that there was no adverse employment action. See Motion at 18-19 and 24, Doc. 26-1 at 19 and 25. However, Plaintiffs have not cited to a case that concludes that an allegation of a personnel investigation or an allegation of a threat of termination, on their own, can never constitute an

13

adverse employment action under FEHA as a matter of law.  Moreover, the Court agrees with Plaintiff that her retaliation claim is not based solely on the allegation that there was an investigation or that there was a threat of termination by the Fire Department.  See Opposition at 13:19-24, Doc. 28 at 13 (stating that the "issue is not whether or not an investigation, in and of itself can support a claim of an 'adverse action'; the issue is can an investigation, along with other adverse facts, support a claim that the Defendants engaged in conduct that, taken as a whole, materially and adversely affected the terms and conditions of Plaintiff's employment"); see also Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1052 n.11 (stating that "it is appropriate to consider plaintiff's allegations collectively under a totality of the circumstances approach" in order to determine whether an adverse employment action occurred).  Therefore, Defendants' argument fails.

> 2.  Defendants' motion to dismiss Plaintiff's FEHA retaliation claim based on California Civil Code § 47(b) is denied.

Defendants argue that Plaintiff's FEHA retaliation claim is barred by the litigation privilege of California Civil Code § 47(b) because Plaintiff's claim is based in part on the personnel investigation undertaken by the Fire Department.  Motion at 19:18, Doc. 26-1 at 20.

"Section 47 establishes a privilege that bars liability in tort for the making of certain statements."  Hagberg v. Cal. Fed. Bank FSB, 32 Cal. 4th 350, 360 (2004).  Pursuant to section 47(b), the privilege bars a civil action for damages for communications made in any (1) legislative proceeding, (2) judicial proceeding, (3) official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to certain statutes governing writs of mandate.  Id.  "The privilege established by this subdivision often is referred to as an 'absolute' privilege, and it bars all tort causes of action except a claim for malicious prosecution."  Id. (citations omitted).

In the FAC, Plaintiff merely alleges that Plaintiff was subjected to an investigation by the Fire Department.  FAC at ¶ 61.  It is unclear whether any *communication* from the Fire Department's investigation constitutes the basis for liability.  In addition, it is unclear what type

of investigation was conducted by the Fire Department and for what purpose, making it impossible for the Court to determine whether the investigation is governed by section 47(b). Further factual development is necessary in order to determine whether section 47(b) applies to the Fire Department's investigation. Therefore, at this stage of the proceedings, Defendants' argument fails.

Defendants similarly argue that Plaintiff's FEHA retaliation claim is barred by the litigation privilege of section 47(b) because Plaintiff's claim is based in part on the criminal investigations conducted by FPD. Motion at 23:11-12, Doc. 26-1 at 24. In the FAC, Plaintiff alleges that the actions of the FPD were in retaliation for Plaintiff's filing of the complaint of sexual discrimination and harassment against members of the FPD. FAC at ¶ 59. From the allegations in the FAC, it is unclear whether any *communication* from the FPD's investigation is at issue. Therefore, the Court cannot at this stage of the proceedings determine whether section 47(b) applies. Accordingly, Defendants' motion to dismiss the second cause of action based on section 47(b) must be denied.

> 3. Defendants' motion to dismiss Plaintiff's FEHA retaliation claim based on California Government Code § 821.6 is denied.

Defendants argue that Plaintiff's FEHA retaliation claim is barred by California Government Code § 821.6. Defendants contend that liability cannot be predicated on a personnel investigation or its outcome. Motion at 22:17-19, Doc. 26-1 at 23.

Under California Government Code § 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't. Code § 821.6. "Although Government Code section 821.6 has primarily been applied to immunize prosecuting attorneys and other similar individuals, this section is not restricted to legally trained personnel but applies to all employees of a public entity." Kemmerer v. Cnty. of Fresno, 200 Cal. App. 3d 1426, 1436 (1988) (citation omitted).

For example, in Kemmerer, plaintiff, a permanent civil service employee, was reinstated

15

following a hearing before a county civil service commission after being initially discharged. Id. at 1431-42. Plaintiff then brought suit against two of his supervisors and the county for damages arising out of the allegedly wrongful discharge. Id. The California Appellate Court concluded that defendants were immune under section 821.6. Id. at 1436-39.

The court emphasized that Defendants initiated formal disciplinary proceedings against plaintiff after an investigation and an interoffice memorandum was filed detailing the investigation and recommending dismissal of plaintiff. Id. The disciplinary proceedings also included a formal notice and opportunity for hearing with full appeal by plaintiff. Id. The court reasoned that the investigation, the preliminary notice and the proceedings before the civil service commission came within the scope of an "administrative proceeding" as used in section 821.6. Therefore, the court held that defendants were immune from tort liability for any acts done to institute and prosecute the disciplinary proceeding. Id. at 1437.

In this case, further factual development is necessary in order to determine whether section 821.6 applies. Plaintiff has only alleged that the Fire Department conducted an investigation. FAC at ¶ 61. It is unclear from the FAC what the scope and purpose of the investigation was, making it impossible for the Court to determine whether the investigation constituted an "administrative proceeding" under section 821.6. Therefore, at this stage of the proceedings, Defendants' motion to dismiss the second cause of action based on section 821.6 is DENIED.

    4.    Defendants' argument that Plaintiffs are immune under California Government Code Sections 818.2, 820.4, 821 and 821.6 fails.

Finally, Defendants contend that "Defendants' investigation and [submission] of records to the District Attorney's Office are also protected by the prosecutorial and discretionary immunities provided in Government Code Sections 818.2, 820.4, 821 and 821.6 as well as the common interest privilege in Civil Code Section 47." Motion at 23:20-24, Doc. 26-1 at 24. Defendants have cited to no case authority or explained at all why Defendants are immune under these provisions. Therefore, this argument fails.

16

Accordingly, Defendants' motion to dismiss Plaintiff's FEHA retaliation claim is DENIED in its entirety.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' motion to dismiss is GRANTED in part and DENIED in part consistent with this order. Any amended complaint must be filed within twenty-one (21) days of the filing of this order.

IT IS SO ORDERED.

Dated: November 17, 2011

_____
CHIEF UNITED STATES DISTRICT JUDGE