IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANDRA SOLIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF FRESNO, et al., ) <br> ) <br> Defendants. ) <br> ) | 1:11-CV-00053 AWI GSA <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> (Doc. No. 35) |

**INTRODUCTION**

On December 8, 2011, Plaintiff Shandra Solis filed a Second Amended Complaint ("SAC") against Defendants City of Fresno, Officer David Fries ("Officer Fries") and Detective John Gomez ("Detective Gomez"). See Court's Docket, Doc. No. 34. Plaintiff brings claims for (1) violation of her right to equal protection; (2) retaliation in violation of California's Fair Employment and Housing Act ("FEHA"); and (3) conspiracy. On December 19, 2011, Defendants filed a motion to dismiss the federal claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  See Court's Docket, Doc. No. 35. For the reasons that follow, the motion to dismiss will be granted.

---

[1] Defendants have attached to their motion a request for judicial notice of an arrest warrant and related information. See Court's Docket, Doc. No. 35-2. Plaintiff does not oppose this request, but it does not appear that Defendants rely on these documents in their moving papers. The Court will therefore deny Defendants' request for judicial notice.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 902 (1983). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965-66 (2007).  Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949; see also Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).

A plaintiff's allegations are taken as true, but courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
>   . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).

## ALLEGED FACTS

In June 2002, Plaintiff began working in the Identification Bureau of the Fresno Police

3

Department ("FPD").  SAC at ¶ 13.  While employed by the FPD, Plaintiff met Officer Kennan Rodems ("Officer Rodems").  Id.  Plaintiff and Officer Rodems were married in June 2005.  Id.

In 2006, during her employment with the FPD, Plaintiff and three other female employees submitted complaints of discrimination and sexual harassment against three male supervisors. Id. at ¶ 14.  The complaints of discrimination and sexual harassment by Plaintiff were well known within the FPD, City of Fresno, and the Fresno County District Attorney's Office ("DA's Office").  Id. at ¶ 15.  The male supervisors against whom the complaints were made were well-liked and were friends of Fresno Police Chief Jerry Dyer ("Dyer") and other members of the FPD.  Id.  Others in the FPD, including but not limited to Dyer, were angry with Plaintiff for making the discrimination and harassment complaint.  Id. at ¶ 16.

Following the submission of her complaint, Plaintiff alleges she was subjected to retaliation by some members of the FPD in that she was ostracized and treated differently than she had been treated prior to the submission of her complaint.  Id.  Because of this retaliation, Plaintiff transferred to the Fresno Fire Department in August 2006.  Id. at ¶ 17.  Although Plaintiff's new position paid significantly less than her position with the FPD, Plaintiff took the new job to get away from the harassment, discrimination and retaliation she experienced at the FPD.  Id.

Marital differences developed between Plaintiff and Officer Rodems that resulted in her moving out of the family home in February 2009.  Id. at ¶ 18.  After their separation, Officer Rodems repeatedly contacted Plaintiff by telephone and text message attempting to reconcile.  Id. at ¶ 19.  Plaintiff informed Officer Rodems on several occasions that she did not want to discuss reconciliation, but he persisted with his communications.  Id.

On May 4, 2009, Plaintiff and Officer Rodems met to resolve a financial matter at a Fresno bank.  Id. at ¶ 20.  In the parking lot of the bank, an argument developed between Plaintiff and Officer Rodems.  Id. at ¶ 21.  In a moment of frustration during the argument, Plaintiff made a single scratch with a key on the passenger side door of the truck being driven by Officer

4

Rodems. Id. The truck was jointly owned by Plaintiff and Officer Rodems. Id. The "keying" by Plaintiff consisted of a single vertical scratch. Id. After Plaintiff entered her vehicle to leave, Officer Rodems approached her vehicle, pounded on the vehicle window and yelled at her in anger. Id. At the time of this incident, Officer Rodems and Plaintiff were still lawfully married, and no divorce or legal separation had been initiated by either party. Id.

After Officer Rodems drove home, he called the FPD to report the incident. Id. at ¶ 22. Despite there being no active crime in progress, Officer Fries was promptly dispatched by FPD to investigate the matter and take a report. Id. After his dispatch, Officer Fries immediately called Officer Rodems and spoke with him about the incident. Id. After speaking with Officer Rodems, Officer Fries went to the bank to investigate the report of vandalism. Id. While interviewing a witness at the bank, Officer Fries learned that Officer Rodems raised his fist toward Plaintiff during the argument. Id. at ¶ 23. Other than the mention of this fact in his report, neither Officer Fries, nor anyone else from the FPD followed up on this report of a criminal assault. Id.

After concluding his investigation at the bank, Officer Fries drove to Officer Rodems' home in Clovis to personally interview him and view the damage to the truck. Id. at ¶ 24. While en route to Officer Rodems' home and before inspecting the damage to the truck, Officer Fries reported to his superior officer that this case appeared to be a felony. Id. During the interview, Officer Rodems told Officer Fries that he did not want to pursue any charges, rather he just wanted the incident to be documented. Id. at ¶ 25.

Officer Fries then summoned the Identification Bureau to photograph the vehicle. Id. at ¶ 26. There was a single vertical scratch on the passenger side of the vehicle from the "keying," and several smaller horizontal scratches that were clearly not related or caused by Plaintiff. Id. According to the report prepared by Officer Fries, Officer Rodems stated during his interview that he saw Plaintiff take "her key and run it vertically down the back passenger door." Id. Officer Rodems did not report that Plaintiff had caused any other damage to his truck, and

5

Officer Fries did not ask Officer Rodems if any of the horizontal scratches had been caused by Plaintiff. Id.

After meeting with Officer Rodems, Officer Fries contacted Plaintiff by telephone. Id. at ¶ 27. Plaintiff cooperated fully and acknowledged that she had scratched the door of the truck. Id. At no time did Officer Fries or any other FPD officer ever ask Plaintiff to describe or explain what damage she caused. Id. Officer Fries also failed to ask Plaintiff about the assault against her by Officer Rodems that was described by the witness at the bank. Id. Despite the lack of evidence indicating that Plaintiff had caused the horizontal scratches on the side of the truck, Officer Fries wrote in his report that after Plaintiff had vertically scratched the door, "she walked towards her passenger door of her car scratching the front passenger door of [Officer Rodems'] pickup with the key." Id. at ¶ 28.

The FPD Policy Manual, and/or FPD Procedure Manual, and/or the FPD website provide that complaints of vandalism are to be reported by the complaining party completing a form over the Internet or by the taking of a "counter report" by a "community service officer."[2] Id. at ¶ 29. The normal and customary practice of the FPD is to handle complaints of vandalism like the one that occurred here in accordance with the FPD Policy Manual, and/or FPD Procedure Manual, and/or the representations made on the FPD website. Id. The FPD Policy Manual, and/or FPD Procedure Manual, and/or the normal and customary practice of FPD do not call for the dispatch of a patrol officer to investigate or take a police report, or for the Identification Bureau to respond to investigate and photograph the alleged damage, when the incident consists of damage to jointly owned property of a married couple by one of the spouses where the amount of the alleged damage is less than $1,500, neither spouse has filed for divorce or a legal separation, and no other crimes are alleged to have occurred. Id.

Once Officer Fries completed his investigation, FPD assigned Detective Gomez to conduct further investigation. Id. at ¶ 30. Detective Gomez conducted further investigation and

---

[2] A "community service officer" is a civilian employee and not a sworn peace officer.

eventually prepared and submitted to the DA's Office a recommendation that Plaintiff be prosecuted for felony vandalism. Id. A charge of felony vandalism is only possible when the damage caused by the vandalism is worth $400 or more. Id. When the damage is worth less than $400, the charge is a misdemeanor. Id. Plaintiff alleges that Detective Gomez' recommendation was based in part on estimates of approximately $1,000 to repair all the damage on the passenger side of the truck, including but not limited to the horizontal scratches which Plaintiff did not cause. Id. at ¶ 31. Plaintiff alleges Detective Gomez knew the repair estimates he relied upon to recommend prosecution of a felony did not accurately represent the cost to repair the damage caused by Plaintiff. Id.

FPD Policy Manual, and/or FPD Procedure Manual, and/or the FPD's normal and customary practices do not call for a detective to investigate complaints of vandalism and forward to the DA's Office a recommendation of prosecution when the incident consists of damage to jointly owned property of a married couple by one of the spouses where the amount of the alleged damage is less than $1,500, neither spouse has filed for divorce or a legal separation and no other crimes are alleged to have occurred. Id. at ¶ 33. The FPD and/or Detective Gomez had not previously submitted to the DA's Office a recommendation for prosecution of such an incident. Id. at ¶ 34.

After receiving the referral from FPD to prosecute Plaintiff for felony vandalism, the DA's Office did not follow its normal and customary practice of assigning this type of case to a Deputy District Attorney to determine whether a criminal complaint should be filed. Id. at ¶ 35. Instead, the matter was referred to Dennis Cooper ("Cooper"), the Chief Deputy District Attorney and Supervisor of the Domestic Violence Unit. Id. at ¶¶ 11, 35. Plaintiff alleges that Cooper sent Plaintiff a letter asking to meet with her to discuss the case due to "the particularities of the incident." Id. at ¶ 35. When Plaintiff called Cooper, he advised her that she did not need an attorney present to meet with him. Id. Plaintiff refused to meet Cooper without her attorney being present. Id.

7

Subsequently, Plaintiff, through her attorney, tendered the full amount of the alleged damage ($1,000). Id. at ¶ 36. Cooper tore up the check and filed a criminal complaint charging Plaintiff with felony vandalism. Id. Plaintiff alleges that it is the normal and customary practice of the DA's Office to encourage settlement of vandalism cases of the nature reported by Officer Rodems rather than to file felony charges. Id.

After the District Attorney filed its criminal complaint, Detective Gomez expedited the issuance of an arrest warrant for Plaintiff by "hand walking" the warrant to the court on a "rush" basis to obtain a judge's signature for Plaintiff's immediate arrest. Id. at ¶ 37. The normal and customary practice is to send warrants in cases such as the one against Plaintiff to the court with other warrants as a group. Id. Warrants handled in this manner can take several weeks to process. Id. The normal and customary practice of the FPD is that a "rush" warrant is only sought for defendants who pose an extraordinary risk to the community. Id.

After the arrest warrant was issued, Detective Gomez and/or the FPD insisted that Plaintiff surrender for arrest that day and refused to allow Plaintiff to surrender the following Monday. Id. at ¶ 38. When Plaintiff's criminal defense attorney and the DA's office were discussing the criminal case before a Superior Court Judge, the Judge stated that the case was appropriate for a negotiated settlement between the parties which would allow the charges to be dismissed once Plaintiff paid for the damages. Id. at ¶ 39. The Judge suggested the case be handled in that manner. Id. However, the DA's Office refused to agree to such a resolution because "the case is in the media." Id.

Plaintiff alleges that once such vandalism charges are filed, it is the normal and customary practice of the DA's Office agree to dismiss the charges of vandalism if the defendant tenders payment of the full amount of the alleged damages. Id. at ¶ 40. Rather than seek a prompt and equitable resolution of the criminal case, the DA's Office continued to pursue felony charges against Plaintiff and objected strongly when the Judge reduced the charge to a misdemeanor. Id. at ¶ 41. The DA's Office repeatedly refused to obey a Court Order requiring it

8

to provide records of similar prosecutions to assist in Plaintiff's criminal defense.  Id.

Finally, Plaintiff alleges that throughout the investigative process and thereafter, she complained about and attempted to file her own complaint against Officer Rodems for assault, battery, and harassing phone calls and text messages.  Id. at ¶ 44.  However, Defendants refused to fully and fairly investigate the matter or take any action similar to what they normally and customarily do with regard to complaints from similarly reporting individuals.  Id.  Specifically, Officer Fries and/or Detective Gomez failed and refused to obtain and/or compare the phone records and text messages between Plaintiff and Rodems, and failed to question Rodems about the assault reported by the witness at the bank.  Id.  Instead, the complaints were downplayed by Defendants and, despite representations to the contrary, Officer Gomez and/or the FPD failed to submit Plaintiff's complaint to the DA's Office.  Id.

**DISCUSSION**

A.  Plaintiff has not stated a "class of one" Equal Protection claim against the individual Defendants.

In the first cause of action Plaintiff again asserts a "class of one" Equal Protection claim under 42 U.S.C. § 1983 against Officer Fries and Detective Gomez.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  Serrano v. Francis, 345 F.3d 1071, 1081 (9th Cir. 2003) (citation omitted).  "Denials [of the equal protection of the laws] by any person acting under color of state law are actionable under § 1983."  Dyess ex rel. Dyess v. Tehachapi Unified Sch. Dist., No. 1:10-CV-00166-AWI-JLT, 2010 WL 3154013, at *6 (E.D. Cal. Aug. 6, 2010).

As the Court discussed in its prior orders, "[a]n Equal Protection claim is usually brought because of an irrational law or by a member of a protected class."  Jercich v. Cnty. of Merced, No. 1:06-CV-00232-OWW-DLB, 2006 WL 3747184, at *9 (E.D. Cal. Dec. 19, 2006) (citation omitted).  However, where state action does not affect a fundamental right or protected

classification, a plaintiff can establish an Equal Protection claim based on a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). A "class of one" Equal Protection claim requires a plaintiff to allege that she has been (1) intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment. Id. The rationale is that "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 602 (2008).

With respect to the differential treatment element, "the level of similarity between plaintiff and the persons with whom they compare themselves must be extremely high." Wilson v. City of Fresno, No. CV F 09-0887 LJO SMS, 2009 WL 3233879, at *7 (E.D. Cal. Oct. 2, 2009) (citing Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005)). "To succeed, plaintiffs must demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects." Chico Scrap Metal, Inc. v. Raphael, No. 2:11-CV-1201-JAM-CMK, 2011 WL 5884254 at *7 -8 (E.D.Cal. Nov. 23, 2011) (quoting Occhionero v. City of Fresno, No. CV F 05-1184 LJO SMS, 2008 WL 2690431, at *9 (E.D.Cal. July 3, 2008)). A plaintiff must establish that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake.

Id. (citing Neilson, 409 F.3d at 105; Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007)). Although the Supreme Court has held that a "class of one" Equal Protection theory does not apply in the public employment context, see Engquist, 553 U.S. at 605, a plaintiff may bring a "class of one" equal protection claim against police officers when the police officers are motivated by "malice alone." Hanes v. Zurick, 578 F.3d 491, 496 (7th Cir. 2009).

1  The Court granted Defendants' prior motions to dismiss Plaintiff's "class of one" equal
2 protection claims in part because Plaintiff failed to allege facts in the original and First Amended
3 Complaints identifying individuals who were prima facie identical to Plaintiff in all relevant
4 respects, and who were treated differently by Officer Fries and Detective Gomez.  Plaintiff's
5 SAC acknowledges that she cannot identify any similarly situated individuals because she does
6 not have access to Defendants' records.  Plaintiff instead alleges on information and belief that
7 Officer Fries and/or Detective Gomez treated the following individuals differently than they did
8 Plaintiff:

> (a) Individuals about whom the FPD, Fries and/or Gomez have received reports from one spouse accusing the other spouse of intentionally damaging jointly owned property;
> (b) Where the amount of damage was less than $1,500;
> (c) Where, as of the date of the alleged incident, no request for legal separation or divorce had been filed; and
> (d) Where the damage to the jointly owned community property was the only crime reported by the complaining spouse.

13 SAC at ¶ 46.  Plaintiff alleges, on information and belief, that when Officer Fries and/or
14 Detective Gomez received reports from the above individuals, they did not immediately dispatch
15 a police officer to respond to the scene where the incident had occurred to attempt to gather
16 evidence, travel to a location where the reporting party is located (but the incident had not
17 occurred), personally interview the reporting party, have the Investigation Bureau respond to
18 photograph the alleged damage, refer the matter to a detective to conduct a further investigation,
19 or rely upon an inflated repair estimate and submit the matter to the DA's Office with the
20 recommendation that the matter be prosecuted as a felony.  Id. at ¶ 47.  Plaintiff alleges there is
21 no rational basis for treating Plaintiff differently.  Id. at ¶ 48.

22  Plaintiff also alleges on information and belief that Defendants singled out and failed to
23 treat Plaintiff like other "individuals who report that their spouse has subjected them to criminal
24 assault and/or harassing phone calls and text messages."  Id.  at ¶ 49.  Plaintiff alleges that when
25 dealing with reports by those individuals, Defendants obtained and reviewed relevant evidence
26 including cell phone records, copies of text messages and witness statements, and then referred

the matter to the DA's Office with the recommendation to prosecute the perpetrator spouse for assault and/or harassing phone calls and/or text messages. Id. at ¶ 51. Plaintiff alleges her differential treatment was irrational. Id. at ¶ 52.

Defendants argue these allegations are insufficient to state a "class of one" equal protection claim because they are conclusory, based on information and belief, and do not specifically identify any comparators. The Court agrees. In the post-Twombly and Iqbal era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim. See Twombly, 550 U.S. at 570. Plaintiff cites Monday v. Saxon Mortg. Servs., 2011 WL 4353125 (E.D. Cal. Sep. 16, 2011), in support of her contention that this requirement is relaxed "when the defendant must necessarily possess full information concerning the facts of the controversy or when the facts lies more in the knowledge of the opposite party." Id. at *3 (citing Turner v. Milstein, 103 Cal. App. 2d 651, 658 (Cal. App. 1951)). That case, however, involved the heightened specificity requirement for pleading fraud and is therefore inapposite.[3] The general pleading standard requires that a plaintiff allege facts that show more than the "mere possibility of misconduct." Iqbal, 129 S. Ct. at 1949-50. The facts alleged must be sufficient to nudge the claims "across the line from conceivable to plausible." Twombly, 550 U.S. at 547, 127 S. Ct. at 1974.

Neither side has cited any Ninth Circuit authority discussing the pleading standard for a "class of one" equal protection claim. Other courts, however, have found that conclusory and speculative allegations fail to state a "class of one" claim. In Glover v. Mabrey, 384 Fed. Appx. 763, 778 (10th Cir. 2010), the plaintiff contractor alleged that the defendants revoked his status as a prequalified bidder in retaliation for bringing various legal challenges against the defendants and making related statements to the media. 384 Fed. Appx. at 766. The plaintiff alleged other similarly situated contractors were treated differently. Id. at 778. The Tenth Circuit affirmed

---

[3] The other case on which Plaintiff relies, Boykin v. KeyCorp, 521 F.3d 202 (2d Cir. 2008), discussed pleading on information and belief under the more relaxed standard for evaluating a case brought by a pro per litigant.

12

dismissal of the plaintiff's claims because his complaint "does not identify any contractor who was treated differently . . . Nor does it identify a single similarly-situated contractor which did not lose its prequalification status after numerous legal challenges or statements to the media." Id.

Even in cases where the plaintiff provided specific examples of similarly situated persons who were treated differently, courts have found that is not enough to state a "class of one" claim without more. In Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55 (2d Cir. 2010), the plaintiffs brought a "class of one" equal protection claim against a town, alleging the town refused to consider its application to connect their property to the sewer system while other similarly situated properties were allowed to connect. 610 F.3d at 59. Although the plaintiffs provided specific examples of individual homes or businesses located in the same area as the plaintiffs' property, the Second Circuit affirmed the district court's dismissal of the plaintiff's "class of one" Equal Protection claim finding that "[n]one of these properties is similar to the [plaintiffs'] proposed 14-home development, let alone so similar that no rational person could see them as different." Id. at 60.

Alleging on information and belief that other unnamed individuals filed complaints in identical situations and received, in essence, opposite treatment, is not enough to state a plausible claim for relief under a "class of one" Equal Protection theory. Plaintiffs' SAC does not identify sufficient facts to determine whether the unnamed individuals were prima facie identical to Plaintiff in all relevant respects. As noted in the Court's two prior orders, Plaintiff again does not allege a specific instance in which a similarly situated person was treated differently by Officer Fries and Detective Gomez. See King v. New York State Div. of Parole, 260 Fed. Appx. 375, 379-80 (2d Cir. 2008) (concluding that because plaintiff "failed to identify a single individual with whom he can be compared for Equal Protection purposes," his class of one equal protection claim was properly dismissed).

Moreover, even if Plaintiff's allegations satisfied the first prong of the Olech test,

13

Plaintiff has not stated a claim under the second prong, which requires her to show that there is no rational basis for the difference in treatment. See 528 U.S. at 564. Plaintiff contends her allegations satisfy this prong[4] because she "is not aware of any specific pleading requirements for pleading this element." Pl.'s Opp'n at 6. Plaintiff is correct that there are no specific facts that must be alleged to satisfy the second Olech prong. The rational basis standard, however, places the burden on the plaintiff to negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." Wilson v. City of Fresno, No. CV F 09-0887 LJO SMS, 2009 WL 3233879, at * 8 (E.D. Cal. Oct. 2, 2009) (citing Lauth v. McCollum, 424 F.3d 631 , 634 (7th Cir. 2005)). Thus, if the SAC, on its face suggests a rational reason for the plaintiff's treatment, her "class of one" equal protection claim must fail. See Chico Scrap Metal, 2011 WL 5884254 at *7-8 (holding that defendants' reliance on toxicity testing and other independent evidence provided a rational basis for their investigation of plaintiffs' scrap metal facilities, and, therefore, the investigation did not violate the plaintiffs' Equal Protection rights). Here, the SAC alleges that in response to a complaint of vandalism to a vehicle, Officer Fries contacted and interviewed both parties. Plaintiff admitted to the vandalism, and complained Officer Rodems had assaulted and harassed her. Plaintiff alleges Officer Fries went to the scene to obtain further evidence, viewed the physical evidence, interviewed an eyewitness, summoned the Identification Bureau to photograph the vehicle, and prepared a report. Plaintiff alleges Detective Gomez conducted further investigation, obtained repair estimates showing more than $400 worth of damage, submitted to the DA's Office a recommendation that Plaintiff be prosecuted for felony vandalism, and did not submit a recommendation that Officer Rodems be prosecuted for assault or harassment.

---

[4] Plaintiff also contends the Court found "no defect regarding this element in the First Amended Complaint and the SAC contains similar allegations" and she has therefore met the pleading standard. Pl.'s Opp'n at 6. This argument is unavailing. The Court did not reach and, therefore, did not discuss the rational basis prong in its prior orders because it found Plaintiff had not satisfied the first Olech prong. The Court will not grant leave to amend based on this "misunderstanding" of the prior order, as the SAC contains sufficient facts to show that the individual Defendants had a rational basis for their treatment of Plaintiff.

Although Plaintiff alleges Officer Fries and Detective Gomez did not handle the vandalism complaint or her complaint of harassment in the normal and customary way, on its face the SAC suggests there was a rational basis for the decisions and actions taken by the individual Defendants' to investigate the incidents.  Accordingly, because any further amendment would be futile, Defendants' motion to dismiss Plaintiff's "class of one" Equal Protection claim against Officer Fries and Detective Gomez will be granted with prejudice and without leave to amend.

B.     Plaintiff has not stated a municipal liability claim against the City of Fresno.

Within the first cause of action, Plaintiff also asserts a municipal liability claim against the City of Fresno under 42 U.S.C. § 1983.  Public entities are liable under 42 U.S.C. § 1983 when the alleged constitutional violation occurred as a result of a policy or custom. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690-91 (1978).  To state a claim for municipal liability for the failure to protect an individual's constitutional rights, a plaintiff must allege the following: (1) the plaintiff possessed a constitutional right, of which he was deprived, (2) the municipality had a policy, (3) the municipal policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the municipal policy is a moving force behind the constitutional violation. Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).  Because the Court finds Plaintiff has not established that she was deprived of her right to Equal Protection, Plaintiff's municipal liability claim must also fail.  Dismissal is with prejudice and without leave to amend.

C.     Plaintiff has not stated a conspiracy claim under 42 U.S.C. § 1983.

In the third cause of action, Plaintiff brings a conspiracy claim, alleging that Defendants, Cooper, and the DA's Office "conspired and agreed among themselves to discriminate against, single out and treat Plaintiff differently than similarly situated members of the general public who are alleged to have committed vandalism of the nature reported by" Officer Rodems.  SAC at ¶ 69.

15

To state a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must allege an agreement or meeting of minds to violate constitutional rights. Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998). Furthermore, a plaintiff must allege that there was an actual deprivation of his constitutional rights as a result of the conspiracy. Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006). Because Plaintiff has not sufficiently alleged an actual deprivation of her Equal Protection rights, Defendants' motion to dismiss Plaintiff's conspiracy claim will be granted with prejudice and without leave to amend.

D.  Plaintiff's FEHA retaliation claim is dismissed

"[P]endant jurisdiction is a doctrine of discretion not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to the litigants; if these are not present, a federal court should hesitate to exercise jurisdiction over state claims." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Because Plaintiff has failed to state a federal claim, there remains no independent basis for federal jurisdiction. The court may decline to exercise supplemental jurisdiction over state claims when the federal claims are dismissed before trial. See 28 U.S.C. § 1367(c)(3); Gibbs, 383 U.S. at 726. Neither Plaintiff nor Defendants have advanced any reason for this Court to retain supplemental jurisdiction over Plaintiff's state law claim for retaliation under FEHA in the event the federal claims were dismissed. Although the Court has resolved three motions to dismiss, this case is still in its early stages. Indeed, discovery has not been completed. The Court will, therefore, decline to exercise its supplemental jurisdiction and will dismiss the remaining state law claim without prejudice.

**CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss Plaintiff's federal claims is GRANTED;
2. Plaintiff's federal claims are dismissed with prejudice and without leave to amend; and

3. Plaintiff's state law claim is dismissed without prejudice.

IT IS SO ORDERED.

Dated:   March 12, 2012

                               CHIEF UNITED STATES DISTRICT JUDGE

17